UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LADARIUS MARSHALL,

        Plaintiff,

v.                                                                             Case No. 22-cv-0525-bhl

GUS PETROPOULOUS, et al,

        Defendants.

## ORDER DENYING MOTION TO DISMISS

        Ladarius Marshall spent twelve years incarcerated for the murder of Lavare Gould based largely on statements he made to law enforcement officers, statements that this Court later concluded, in granting Marshall's petition for habeas corpus, were made in violation of his *Miranda* rights. *Marshall v. Eckstein*, No. 15-CV-008, 2020 WL 1939182 (E.D. Wis. Apr. 22, 2020). Following up on his habeas victory, Marshall now brings suit under 42 U.S.C. §1983 and seeks to recover damages from the Milwaukee police officers who interrogated him: Gus Petropoulous, Michael Braunreiter, Timothy Heier, and Matthew Goldberg. (*See* ECF No. 1.) Marshall also sues other, as yet unidentified, police officers and the City of Milwaukee. (*See id.*) His lead claim is that the officers and City violated his Fifth Amendment rights. (*See id*. ¶¶53–58.) He also asserts claims against the officers for violating his Fourteenth Amendment rights, failing to intervene, and conspiring to deprive him of his constitutional rights. (*Id.* ¶¶59–75.) And his complaint includes state law claims against the officers for intentional and negligent infliction of emotional distress, (*see id.* ¶¶76–81), and against the City based on respondeat superior and indemnification theories. (*See id.* ¶¶82–88.)

        On June 23, 2022, just weeks after Marshall filed his complaint, the Supreme Court decided *Vega v. Tekoh*, 142 S. Ct. 2095 (2022), confirming that a mere *Miranda* violation is not redressable under Section 1983. Based on *Vega*, Defendants have moved to dismiss Marshall's Fifth Amendment claim. (ECF No. 18.) They also offer an array of largely underdeveloped arguments for dismissal of Marshall's other claims. (*Id.*) Defendants' efforts are misplaced at this point in the case. They overstate the holding in *Vega* and understate the breadth of Marshall's detailed

allegations. Accordingly, their motion will be denied. While discovery may show that Marshall's claims lack merit, his allegations are sufficient to survive a motion to dismiss.

## BACKGROUND[1]

In August 2008, Ladarius Marshall was sixteen years old and about to start his freshman year of high school. (ECF No. 1 ¶¶1, 7.) Marshall struggled academically in several subjects, including reading, and received additional academic support through special education classes. (*Id.* ¶7.) The Milwaukee Police Department, after receiving information implicating Marshall in the murder of Lavare Gould, arrested Marshall at his grandmother's home. (*Id.* ¶¶1, 10, 12.) The officers placed Marshall in a windowless interrogation room at 7 a.m. and left him there for hours, without any adult advocate, until Defendants Petropoulous and Braunreiter arrived to question him. (*Id.* ¶¶14–16.)

Early in the interrogation, Marshall told Petropoulous and Braunreiter that he did not wish to make a statement. (*Id.* ¶17.) This did not stop them. Instead, the officers prodded Marshall by providing details of the murder investigation and falsely telling Marshall that they asked his grandmother—his legal guardian—about his whereabouts the night of the murder. (*Id.* ¶¶7, 19.) Marshall repeatedly asserted his right to end the questioning, but the officers continued to question him, halting only after he asked them to stop several times. (*Id.* ¶20.)

Even this reprieve was only temporary. At 2 p.m., more than two hours after questioning paused, Marshall asked an officer for an update on his detention. (*Id.* ¶21.) Braunreiter asked Marshall if he felt like talking. (*Id.* ¶22.) Again, Marshall said he had nothing to say. (*Id.* ¶23.) But again this did not stop the officers. Instead, Braunreiter and Petropoulous continued interrogating Marshall until he finally started talking. (*Id.*) Then, in subsequent questioning by Braunreiter (solo) and Heier and Goldberg (together), Marshall placed himself at the crime scene and stated he shot a weapon provided to him by the informant. (*Id.* ¶25.) Even then Marshall did not say he shot Gould. (*Id.*) The officers declined Marshall's requests to call his grandmother until finally allowing him to do so at 6 p.m. (*Id.* ¶¶29–30.)

Based on Marshall's incriminating statements, authorities charged Marshall as party to first-degree intentional homicide and possession of a weapon by a minor. (*Id.* ¶¶32, 41.) He was charged as an adult, and while his attorney asked that he be tried in juvenile court, the trial court

---

[1] This Background is derived from Marshall's complaint, ECF No. 1, the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

denied the motion. (*Id.* ¶¶33–35.) Marshall's attorney then filed a motion to suppress his incriminatory statements. (*Id.* ¶36.) The trial court denied that motion too. (*Id.* ¶38.) Marshall ultimately pleaded guilty to second-degree reckless homicide and was sentenced to thirty years imprisonment. (*Id.* ¶¶39–40.)

After exhausting his state court options to challenge his conviction, Marshall filed a petition for writ of habeas corpus in the Eastern District of Wisconsin. (*Id.* ¶¶42–43.) On April 22, 2020, the Court granted Marshall's petition, concluding his *Miranda* rights had been violated. (*Id.* ¶44.) After the writ was granted, the state did not appeal but instead dismissed the charges against him. (*Id.* ¶45.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts*, 817 F.3d at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

Defendants largely rely on *Vega* to argue that Marshall's complaint should be dismissed in its entirety because a *Miranda* violation cannot support a Section 1983 claim. Because Marshall has alleged that the officers coerced his confession, however, he has adequately pleaded violations of both his Fifth and Fourteenth Amendment rights. Marshall has also alleged sufficient facts to survive dismissal on his remaining federal and state law claims.

**I. Because Marshall Has Alleged Sufficient Facts to Suggest His Confession Was Coerced, His Federal Law Claims Survive Dismissal.**

An individual defendant can be found personally liable under Section 1983 if he or she: (1) engaged in conduct while "acting under color of state law," and (2) the conduct "deprived the plaintiff of 'rights, privileges, or immunities secured by the Constitution.'" *DiDonato v. Panatera*, 24 F.4th 1156, 1159 (7th Cir. 2022) (quoting *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994); 42

U.S.C. §1983). In support of dismissal, Defendants argue that the Supreme Court's decision in *Vega* precludes Marshall's suit because he has only pleaded that they violated his *Miranda* rights. (ECF No. 18 at 5.) They also argue Marshall has failed to plead facts sufficient to support a plausible finding that the officers' actions "shock the conscience" as required for a Fourteenth Amendment claim. (*Id.* at 8.) In the alternative, Defendants contend both counts should be dismissed because Marshall has not adequately alleged that they were the proximate cause of Marshall's damages and because the officers are entitled to qualified immunity. (*Id.* at 10–16.) Finally, Defendants argue that the remaining federal law claims should be dismissed because there is no actionable underlying violation. (*Id.* at 16.) Because Marshall has pleaded enough facts to allege his confession was coerced, Defendants' motion must be denied as to the federal law claims.

### A. Marshall Has Adequately Alleged a Fifth Amendment Claim.

The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." U.S. Const. Am. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court embraced additional "prophylactic measures" to help secure the rights protected by the Fifth Amendment. *See id.*; *Chavez v. Martinez*, 538 U.S. 760, 772 (2003). Under *Miranda*, prosecutors are precluded from using a suspect's statements made during police questioning unless the suspect was first informed of and waived his rights to counsel and against self-incrimination prior to the interrogation. 384 U.S. at 444–45. These warnings are intended "to prevent violations of the right protected by the text of the Self-Incrimination Clause—the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning." *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018) (quoting *Chavez*, 538 U.S. at 772). Because these "prophylactic measures" go beyond the requirements of the Fifth Amendment, the Seventh Circuit has recognized that *Miranda* violations alone do not provide a basis for a Section 1983 claim. *Id.*; *Fosnight v. Jones*, 41 F.4th 916, 923 (7th Cir. 2022) (citing *Chavez*, 538 U.S. at 772 (2003)). The Seventh Circuit's approach was confirmed by the Supreme Court in *Vega*, as the Court explained that a *Miranda* violation by itself is not "tantamount to a violation of the Fifth Amendment." *Vega*, 142 S. Ct. at 2101–02. Rather, *Miranda* only created rules to safeguard a suspect's Fifth Amendment right during his or her custodial interrogation. *Id.* Thus, it is entirely possible for an un-*Mirandized* suspect to "make self-incriminating statements without any hint of compulsion." *Id.* at 2101.

At the same time, the use of a statement taken through a *Miranda* violation in a criminal case leading to the suspect's conviction may very well also violate the Fifth Amendment. Statements that are coerced or involuntary plainly violate the Fifth Amendment's self-incrimination clause, regardless of *Miranda* compliance. The voluntariness of a confession is entirely independent of any *Miranda* warnings and determined instead by the totality of the circumstances: "whether the suspect confessed voluntarily, of his own free will, or whether the police overrode his volition." *Jackson v. Curry*, 888 F.3d 259, 265 (7th Cir. 2018); *United States v. Abdulla*, 294 F.3d 830, 836 (7th Cir. 2002) ("[A] 'confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'") (quoting *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998)). This inquiry depends on the accused's circumstances, the nature of his interrogation, and whether the conditions generally indicate the accused's "will was overborne." *Jackson*, 888 F.3d at 265. Other considerations include the age of the suspect, the presence of a friendly adult in the case of juveniles, the duration of the interrogation, the suspect's educational background and prior experience with law enforcement. *See A.M. v. Butler*, 360 F.3d 787, 800–01 (7th Cir. 2004); *Hardaway v. Young*, 302 F.3d 757, 765–66 (7th Cir. 2002) ("[T]he mere fact that [petitioner] was 14 and questioned without an adult present does not by itself render his confession involuntary, but it does require that a court conduct a searching review of the facts."); *Murdock v. Dorethy*, 846 F.3d 203, 209 (7th Cir. 2017) ("The voluntariness determination . . . does not turn on the presence or absence of a single factor, but instead requires 'careful scrutiny of all the surrounding circumstances.'") (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 266 (1973)).

If Marshall's only claim were a mere *Miranda* violation and nothing more, he would be out of luck in pursuing a Section 1983 claim. But he does not rest his claim solely on *Miranda* violations; he alleges that his confession was coerced and supports that allegation with additional facts. Among other things, Marshall alleges he was sixteen and thus interrogators should have used "[s]pecial caution." *Murdock*, 846 F.3d at 209; *J.D.B. v. North Carolina*, 564 U.S. 261, 272 (2011) ("[C]hildren . . . 'often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.'") (quoting *Bellotti v. Baird*, 443 U.S. 622, 635 (1979) (plurality opinion)). Marshall was also in special education classes and had a learning disability. (ECF No. 1 ¶7); *Dassey v. Dittmann*, 877 F.3d 297, 304 (7th Cir. 2017) (collecting

factors in assessing voluntariness, including limited educational attainment and intellectual disabilities). The officers left Marshall in the windowless interrogation room for twelve hours without his grandmother or other friendly adult present. (ECF No. 1 ¶¶14–30); *Dassey*, 877 F.3d at 305 ("In juvenile cases, the law is particularly concerned with whether a friendly adult is present for or consents to the interrogation."). These allegations are enough to support Marshall's claim that the officers overrode his volition.[2] *See Jackson*, 888 F.3d at 265; *Hardaway*, 302 F.3d at 765 ("[I]n marginal cases—when it appears the officer or agent has attempted to take advantage of the suspect's youth or mental shortcomings—lack of parental or legal advice could tip the balance against admission.") (quoting *United States v. Wilderness*, 160 F.3d 1173, 1176 (7th Cir. 1998)). Accordingly, Defendants are not entitled to dismissal of Marshall's Fifth Amendment claim.

### B. Marshall's Fourteenth Amendment Claim Likewise Survives.

Voluntariness of a confession likewise implicates the Fourteenth Amendment. Interrogation tactics that "shock the conscience" can support a freestanding due process claim for purposes of Section 1983. *See Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017); *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). What constitutes "conscience shocking" conduct is open to interpretation, but courts consider whether the police conduct was "too close to the rack and the screw." *Fox*, 600 F.3d at 841 (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)). Interrogation tactics like lies, threats, and insults are not conscience shocking, while "forcing an emetic down a person's throat to forcibly extract evidence from a suspect's stomach" clearly would be. *Id.* (citing *Rochin*, 342 U.S. at 172; *Tinker v. Beasley*, 429 F.3d 1324, 1329 (11th Cir. 2005)). And factors that could transform a voluntary confession into a coerced one—like whether a suspect has a learning disability—do not necessarily mean that the tactics shock the conscience. *See Cairel v. Alderden*, 821 F.3d 823, 833–34 (7th Cir. 2016) (upholding summary judgment for the defendants because the undisputed facts showed the plaintiff, despite having a learning disability, participated fully in the interrogation, corrected errors in his written confession, and said the police treated him well).

Defendants argue that Marshall's Fourteenth Amendment claim is simply a recasting of his Fifth Amendment claim, and because he does not allege facts showing the officers' conduct

---

[2] Marshall's Fifth Amendment claim is brought against the City of Milwaukee in addition to the officers. (*See* ECF No. 1 ¶¶53–58.) It is far from clear that Marshall's allegations are sufficient to support a Fifth Amendment *Monell* claim against the City. But in Defendants' myriad of arguments in support of their motion to dismiss, they do not address—and the Court will not rule on—whether the City is a proper defendant.

"shocked the conscience," this claim should also be dismissed. (ECF No. 18 at 8.) Seventh Circuit law suggests otherwise. While Defendants are correct that Marshall has not specifically pleaded that the officers' tactics shocked the conscience, he has alleged that their misconduct "was objectively unreasonable," undertaken "intentionally," resulted in his "lengthy wrongful imprisonment," denied Marshall's constitutional right to a fair trial, and "offended recognized fundamental principles of justice and fairness." (ECF No. 1 ¶¶63–65.) And the Seventh Circuit has held that the use of a coerced confession to obtain a conviction is itself a Fourteenth Amendment violation. *See Dassey*, 877 F.3d at 303 ("The Due Process Clause of the Fourteenth Amendment forbids the admission of an involuntary confession in evidence in a criminal prosecution.") (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985)); *Carrion v. Butler*, 835 F.3d 764, 775 (7th Cir. 2016) ("A foundational principle of due process of law is that the state cannot procure a criminal conviction through the use of an involuntary confession.") (quoting *Schneckloth*, 412 U.S. at 223–26). Because Marshall has plausibly alleged that his confession was coerced, his Fourteenth Amendment claim survives a motion to dismiss.

### C. Defendants' Remaining Arguments Do Not Warrant Dismissal of Marshall's Fifth and Fourteenth Amendment Claims.

Defendants next contend that Marshall's Fifth and Fourteenth Amendment claims must be dismissed because the officers did not proximately cause Marshall's conviction and are entitled to qualified immunity in any event. Both arguments fail.

Defendants maintain that they cannot be liable because they were not responsible for introducing Marshall's confession in his criminal case. They insist that if anyone is to blame, that responsibility falls on "[t]he prosecutor, trial judge, and two separate Wisconsin appellate courts." (ECF No. 18 at 10.) This effort for legal absolution fundamentally understates their responsibility for their own actions and misstates the law.

It is well-established that police officers can be held liable for eliciting coerced statements. *See, e.g.*, *Chavez*, 538 U.S.; *Jackson*, 888 F.3d at 265; *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 766 (N.D. Ill. 2012); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026–27 (7th Cir. 2006); *Hill v. City of Chi.*, No. 06 C 6772, 2009 WL 174994 (N.D. Ill. Jan. 26, 2009); *Smith v. Burge*, 222 F. Supp. 3d 669, 685 (N.D. Ill. 2016). *See also Jones v. City of Chi.*, 856 F.2d 985, 994 (7th Cir. 1988) ("If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine and prosecute him. They cannot hide behind the officials whom they

have defrauded."). Marshall has alleged that the officers coerced his statements that led to his wrongful imprisonment. Those allegations are enough to support a possible finding that the officers "proximately caused" Marshall's conviction.

Defendants fare no better with their invocation of qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials are not entitled to qualified immunity if: (1) "the facts that a plaintiff has alleged make out a violation of a constitutional right"; and (2) "the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted).

Marshall has alleged a violation of his Fifth Amendment rights, as discussed above, satisfying the first prong of the inquiry. And that right was "clearly established" at the time of the officers' misconduct in 2008. *See Hobbs*, 899 F. Supp. 3d at 763–64 (describing the long-standing nature of the right). In particular, Marshall alleges that the law has recognized for decades the susceptibility of children to interrogation, and that the law has similarly recognized that the absence of a guardian and intellectual limitations are also factors in the coercion analysis. (ECF No. 21 at 25.) At the pleading stage, this is enough to overcome qualified immunity. *See Sánchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 703 (N.D. Ill. 2020) ("Because 'whether interrogation tactics are unconstitutionally coercive is an inquiry that depends on the specific facts and circumstances in a particular case,' and because [the plaintiff] alleges facts that align this case with the circumstances in [specific cases], the defendant officers are not entitled to qualified immunity at the pleading stage.") (quoting *Gill*, 850 F.3d at 341).

### D. Marshall Has Sufficiently Pleaded his Failure to Intervene and Conspiracy Claims.

Defendants next argue that Marshall's failure to intervene and conspiracy claims should be dismissed because there is no underlying constitutional violation. (ECF No. 18 at 16.) While typically the Constitution creates only negative duties for state actors, a state actor's failure to intervene can also render them culpable under Section 1983. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Officers, once given a "badge of authority[,] . . . may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Id.* (quoting *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)).

To be liable, an officer must have reason to know both that a constitutional deprivation was taking place and that "he had a realistic opportunity to intervene to prevent the deprivation." *Hill*, 2009 WL 174994, at 10 (citing *Montano v. City of Chi.*, 535 F.3d 558, 569 (7th Cir. 2008); *Yang*, 37 F.3d at 285); *Young v. City of Chi.*, 425 F. Supp. 3d 1026, 1035 (N.D. Ill. 2019) (citing *Gill*, 850 F.3d at 342).

As discussed above, Marshall has sufficiently pleaded that the officers coerced his statements in violation of the Fifth and Fourteenth Amendments and are not entitled to qualified immunity because they were violating clearly established law. If proven, the officers therefore would have known that a constitutional deprivation was taking place. Marshall has also alleged that both Defendants Petropoulous and Braunreiter were present for his interrogation, (ECF No. 1 ¶18), suggesting that they each had the opportunity to intervene. *See Hill*, 2009 WL 174994, at 10. Marshall also alleges that Defendants Braunreiter, Heier, and Goldberg all conducted additional interviews—Heier and Goldberg together, Braunreiter individually—providing additional opportunities for each officer to intervene. At the pleading stage, this is enough. *See Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("At the least, a reasonable jury might conclude (if the plaintiff's theory of the case is credited) that the other officers should have cautioned [Defendant]. . . . Such a conclusion would render the plaintiff's intervention claim quite tenable.").

To allege a conspiracy claim under Section 1983, Marshall must show that Defendants conspired to deprive him of his constitutional rights. *Jones*, 856 F.2d at 992 ("To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are."). Conspiracy is "not an independent basis of liability in §1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Rather, Marshall must show an actual violation of his constitutional rights to hold Defendants liable under §1983 for conspiring to violate his rights.[3] *Boothe v.*

---

[3] Conspiracy claims when all parties are state actors may be redundant. *See Logan v. Wilkins*, 644 F.3d 577, 583 n.1 (7th Cir. 2011) (noting that the "conspiracy matters only" with respect to the private actor defendant, because the other defendants as state actors were already "amenable to suit" under § 1983). But just because a §1983 conspiracy claim may be redundant does not necessarily warrant its dismissal. *See Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1077 (N.D. Ill. 2014) ("[S]aying that a § 1983 conspiracy charge is *unnecessary* or *duplicative* is not the same as saying that it is *prohibited*."); *Jones*, 856 F.2d at 992 (finding evidence sufficient to support finding of conspiracy between only state actors).

*Sherman*, 66 F. Supp. 3d 1069, 1077 (N.D. Ill. 2014) (citing *Goldschmit v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982)).

Marshall's complaint alleges both actual violations of his Fifth and Fourteenth Amendment rights and that the officers worked together and separately to unlawfully coerce his incriminating statements. (*See* ECF No. 1 ¶¶17–25.) He also alleges that the defendants "committed overt acts" and "conspired to accomplish an unlawful purpose by an unlawful means." (*Id.* ¶¶72–73); *Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007) ("The minimum ingredient of a conspiracy . . . is an agreement to commit some future unlawful act in pursuit of a joint objective."). Because Marshall's complaint identifies the conspiracy's parties, purpose, and timeline, this is enough to give sufficient notice to the defendants concerning the contours of the conspiracy claim and is therefore enough to survive a motion to dismiss. *See Sánchez*, 447 F. Supp. 3d at 705; *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) ("Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy."). Defendants' challenges thus fail.

## II. Marshall's Wisconsin Tort Claims Likewise Survive.

### A. Marshall Has Stated an Intentional Infliction of Emotional Distress Claim.

Defendants also seek dismissal of Marshall's state law intentional and negligent infliction of emotional distress claims. An intentional infliction of emotional distress claim requires a plaintiff to establish that the defendant's conduct was (1) intended to cause emotional distress, (2) extreme and outrageous, and (3) the cause-in-fact of the plaintiff's emotional distress, in addition to proving that (4) the plaintiff suffered "an extreme disabling emotional response to the defendant's conduct." *Rabideau v. City of Racine*, 627 N.W.2d 795, 803 (Wis. 2001).

The defendants contend that Marshall has failed to plead any facts lending to "extreme and outrageous" conduct. (ECF No. 18 at 17.) To constitute extreme and outrageous, the conduct must "go beyond all possible bounds of decency." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (quoting *Harriston v. Chi. Tribune Co.*, 922 F.2d 697, 702–03 (7th Cir. 1993) (interpreting equivalent Illinois state tort statute)). Marshall has alleged that the officers conspired to deprive him of his Fifth and Fourteenth Amendment rights by coercing incriminating

statements despite the fact that he was a juvenile with a learning disability, resulting in a decade of incarceration. At the pleading stage, these allegations are sufficient to survive dismissal.[4]

### B. Marshall's Negligent Infliction of Emotional Distress Claim Is Also Sufficiently Pleaded.

For negligent infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct fell below the standard of care, (2) the plaintiff suffered an injury, and (3) the defendant's conduct was cause in fact of the plaintiff's injury. *See Rabideau*, 627 N.W.2d at 800. Defendants argue that they are immune to Marshall's negligent infliction of emotional distress claim pursuant to Wis. Stat. Section 893.80(4). (ECF No. 18 at 17.) Section 893.80(4) grants immunity to "state officers and employees . . . [for] personal liability for injuries resulting from acts performed within the scope of their official duties." *Pries v. McMillon*, 784 N.W.2d 648, 654 (Wis. 2010) (citing *Kimps v. Hill*, 546 N.W.2d 151, 156 (Wis. 1996)). These types of acts are also known as "discretionary acts." *Lodl v. Progressive N. Ins. Co.*, 646 N.W.2d 314, 324 n.6 (Wis. 2002); *Willow Creek Ranch, LLC v. Town of Shelby*, 611 N.W.2d 693, 700 (Wis. 2000). Immunity for discretionary acts "does not apply to: (1) the performance of ministerial duties; (2) the performance of duties with respect to a 'known danger;' (3) actions involving medical discretion; and (4) actions that are 'malicious, willful, and intentional.'" *Bicknese v. Sutula*, 660 N.W.2d 289, 296 (Wis. 2003) (citing *Willow Creek Ranch*, 611 N.W.2d at 700). Determination of whether immunity attaches is made on a case-by-case basis. *Lodl*, 646 N.W.2d at 343.

Defendants rely on *Sheridan v. City of Janesville* to argue that because police officer actions such as the decision to arrest are discretionary and therefore entitled to immunity, conducting an interview of a criminal defendant, also a discretionary act, should entitle them to immunity too. (ECF No. 18 at 18); 474 N.W.2d 799, 802 (Wis. Ct. App. 1991). But immunity for government officials does not attach "merely because the police officers' conduct involves discretion." *Sheridan*, 474 N.W.2d at 802. Instead, a court should ask "whether the decision involved the type of judgment and discretion which rises to governmental discretion, as opposed to professional or technical judgment and discretion." *Id.* (quoting *C.L. v. Olson*, 409 N.W.2d 156, 159 (Wis. Ct. App. 1987), *aff'd*, 422 N.W.2d 614 (1988)). Therefore, a medical examiner's

---

[4] Marshall also claims that the City of Milwaukee is liable for the officers' torts under a respondeat superior theory. (ECF No. 1 ¶¶82–85.) It is unclear whether the City can be held liable for an intentional tort. *See* Wis. Stat. § 893.80(4); *Nelson v. City of Milwaukee*, 203 N.W.2d 684, 697 (Wis. 1973). But, again, Defendants do not raise this theory, (*see* ECF No. 18 at 16), and the Court will therefore not rule on it.

decision to conduct an autopsy is entitled to immunity, but not the manner in which he performs the autopsy. *Id.* (citing *Scarpaci v. Milwaukee Cnty.*, 292 N.W.2d 816, 826–27 (Wis. 1980)). But police officers deciding whether to search, handcuff, subject to force, arrest, and breathalyze a suspect are entitled to immunity because those decisions involve "subjective evaluation of the law." *Id.* (citing *C.L.*, 422 N.W.2d at 620)).

The manner in which police officers conduct an interrogation requires subjective interpretation of Fifth and Fourteenth Amendment law, making interrogation itself a discretionary act. Moreover, the officers' actions could be classified as "malicious, willful, and intentional," thereby meeting the fourth exception to governmental immunity. While there is some disagreement over whether the intentional conduct exception applies to negligent acts, the underlying Wisconsin law attaches immunity to particular conduct and is not dependent on a legal theory. *See Price ex rel. J.K. v. Mueller-Owens*, 516 F. Supp. 3d 816, 831 (W.D. Wis. 2021) (citing *C.L.*, 422 N.W.2d at 619) ("[I]t is the nature of the specific act upon which liability is based, as opposed to the categorization of the general duties of a public officer, which is determinative of whether an officer is immune from liability.")). The fact that the officers did not inform Marshall's grandmother of his custody could suggest malicious, willful, and intentional behavior on the part of the officers,[5] especially when his grandmother called the police station to try and determine Marshall's whereabouts while he was in custody. (ECF No. 1 ¶31.) Again, at the pleading stage, this is enough to stave off Defendants' motion to dismiss on this claim.

And because the officers were acting within the scope of their employment for the City of Milwaukee when interrogating Marshall, the City could also be liable with respect to the negligent infliction of emotional distress claim. *See Shannon v. City of Milwaukee*, 289 N.W.2d 564, 568 (1980) ("Under the doctrine of respondeat superior[,] an employer can be held vicariously liable for the negligent acts of his employees while they are acting within the scope of their employment."). Marshall's indemnification claim against the City likewise survives for the negligent infliction of emotional distress claim. *See Geboy v. Oneida Cnty.*, No. 19-cv-574-bbc, 2020 WL 7398660, at *10 (W.D. Wis. Dec. 17, 2020) (finding the "malicious, willful and

---

[5] Plaintiff also argues that because the officers did not inform Marshall's guardian that he was taken into custody in violation of Wis. Stat. Section 938.19(2), they failed to perform a required ministerial duty and are thus barred from governmental immunity. (ECF No. 21 at 32–33.)

intentional" exception may apply to preclude summary judgment for municipal as well as officer defendants).

## CONCLUSION

For the reasons given above,

**IT IS HEREBY ORDERED** that the motion to dismiss, ECF No. 18, is **DENIED**.

Dated at Milwaukee, Wisconsin on January 24, 2023.

                                                      s/ *Brett H. Ludwig*
                                                    BRETT H. LUDWIG
                                                  United States District Judge